**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| ROBERT J. LONGO, | Civil Action No. 2:16-cv-09114 (JLL) (JAD) |
| Plaintiff, | |
| v. | **OPINION** |
| ENVIRONMENTAL PROTECTION & IMPROVEMENT COMPANY, INC., | |
| Defendant. | |

**LINARES**, District Judge.

Before the Court is Defendant Environmental Protection & Improvement Company, Inc., (hereinafter "Defendant" or "EPIC")'s partial motion to dismiss (ECF No. 11, "Def.'s Mot. Dismiss") Plaintiff Robert J. Longo (hereinafter "Plaintiff" or "Longo")'s Complaint (ECF No. 1, "Compl.") pursuant to Federal Rule of Civil Procedure 12(b)(6) and Plaintiff's motion for a preliminary injunction (ECF No. 12, "Pl.'s Mot. Prelim. Inj.") against Defendant pursuant to Federal Rule of Civil Procedure 65. In accordance with Federal Rule of Civil Procedure 78, the Court has considered the submissions of the parties and decides this matter without oral argument. For the reasons set forth below, the Court grants in part and denies in part Defendant's partial motion to dismiss and denies Plaintiff's motion for a preliminary injunction.

## I.    BACKGROUND

### A. Factual Background

This matter revolves around a series of agreements[1] connected to the purchase and sale of EPIC and its ownership history.   In or around 1971, Plaintiff formed R.J. Longo Construction Company, Inc., ("RJLCC").   Compl. ¶ 6.   RJLCC was formed for the purpose of performing governmental contracts pertaining to sewage and water distribution, transportation and treatment and began doing business as EPIC in or around 1989. *Id.* ¶¶ 6, 7.   EPIC and the Passaic Valley Sewerage Commissioners ("PVSC") entered into a services agreement ("EPIC/PVSC Services Agreement") in 1990. *Id.* ¶ 9.   In or around 1993, according to Longo's Complaint, the PVSC published a Request for Qualifications pursuant to which the PVSC solicited statements of qualifications from companies with the necessary resources to provide comprehensive sludge management services for the PVSC. *Id.* ¶ 10.   As a result of said solicitation, in August 1996, the PVSC entered into a services agreement with Wheelabrator Clean Water New Jersey, Inc. ("WCWNJ") titled "Service Agreement: Comprehensive Sludge Management Services between Passaic Valley Sewerage Commission and Wheelabrator Clean Water New Jersey, Inc." ("PVSC Services Agreement"). *Id.* ¶ 11, Ex. A.   The EPIC/PVSC Services Agreement terminated in 1996 immediately prior to the effective date of the PVSC Services Agreement[2]. *Id.* ¶¶ 9, 12.

---

[1] The parties agree that New Jersey law governs the agreements relevant to this action. *See* Compl. ¶ 8; *see also* Def.'s Mot Dismiss 5.

[2] Throughout the duration of the PVSC Services Agreement, the following parties amended it on the following dates:

- **August 10, 2000**:  WCWNJ and PVSC entered into an amendment to the PVSC Services Agreement ("First PVSC Services Agreement Amendment"). *See* Compl., Ex. A-1.

- **December 11, 2002**: Synagro-WCWNJ, Inc. and PVSC entered into a second amendment to the agreement ("Second PVSC Services Agreement Amendment"). *See* Compl., Ex. A-2.

- **June 20, 2006**: Synagro-WCWNJ, LLC (formerly Synagro-WCWNJ, Inc. and Wheelabrator Clean Water New Jersey, Inc.) and PVSC entered into a third amendment to the aforementioned agreement ("Third PVSC Services Agreement Amendment"). *See* Compl., Ex. A-3.

While still owned by Longo, EPIC filed suit in 1994 against the PVSC in the Superior Court of New Jersey, Essex County ("PVSC Services Agreement Litigation"); the suit was later amended to include, among others, WCWNJ as a defendant. *Id.* ¶ 15. The matter was later removed by certain defendants to the United States District Court for the District of New Jersey and a judgment was entered by the court in or around March 1998. *Id.* ¶¶ 16, 17.

In 1997[3], Compost America Holding Company, Inc. ("CAHC") purchased all issued and outstanding shares of EPIC corporate stock pursuant to stock purchase agreements; EPIC continued to do business under the same name after the sale. Def.'s Mot. Dismiss 4; Compl. ¶¶ 18, 41. In conjunction with the sale of EPIC to CAHC, Longo asserts that the EPIC/CAHC Stock Purchase Agreements omitted from the transaction certain assets including various litigations by and against EPIC ("Excluded Litigation"[4]) and assigned to Longo all of EPIC's right title and interest with respect to the Excluded Litigation. *Id.* ¶¶ 19, 21.

During a pending appeal in the aforementioned matter, the claims asserted by EPIC were resolved by a negotiated settlement by and between the then-remaining parties and the parties ultimately settled the PVSC Services Agreement Litigation in or around February 1999. *Id.* ¶ 22. The settlement allegedly resulted in four agreements termed the "1999 Agreements"[5] by Longo. *Id.* ¶ 23. Among the parties, EPIC, Wheelabrator Water Technologies, Inc., and

---

- **August 11, 2016**: PVSC and Synagro – WCWNJ, LLC entered into a fourth amendment ("Fourth PVSC Services Agreement Amendment")[2]. *See* Compl., Ex. A-4.

Longo contends that "most recently, pursuant to the Fourth PVSC Services Agreement Amendment, the PVSC Services Agreement was renewed and extended by the PVSC for an initial period of five (5) years from August 31, 2016 to August 31, 2021; subject to PVSC's sole option to further extend the PVSC Services Agreement for three (3) additional terms of five (5) years (*i.e.*, potentially through August 31, 2036)." Compl. ¶ 14. EPIC sets forth that the Fourth Amendment "was entered into after the twenty (20) year term of the PVSC Service Agreement expired." Def.'s Mot. Dismiss 7.

[3] The parties both set forth different dates in 1997 of which they purport that the sale of the stocks took place. *See* Def.'s Mot. Dismiss 4; *see also* Compl. ¶ 18.

[4] According to Plaintiff, "potentially relevant to this action, the Excluded Litigation included, among others the Settled PVSC Services Agreement." Compl. ¶ 20.

[5] According to Longo, the "1999 Agreements" include, the Articles of Agreement, Transportation Services Agreement, Earn Out Agreement and Security Agreement. Compl. ¶ 23 (a)- (d).

WCWNJ entered into the Articles of Agreement ("Articles of Agreement"); EPIC and WCWNJ entered into the Sludge Transportation Services Agreement ("Transportation Services Agreement"). Compl. ¶ 23 (a) – (b); Def.'s Mot. Dismiss 9. The Transportation Services Agreement set forth that EPIC would function as a subcontractor of WCWNJ, which was subsequently bought by Synagro Technologies, Inc. ("Synagro")("Synagro-WCWNJ"), to provide transportation and related services for the PVSC on the terms and conditions contained in the PVSC Services Agreement. Compl. ¶ 23 (b); Def.'s Mot Dismiss 9. The parties dispute whether two additional agreements, the Earn Out Agreement ("Earn Out Agreement") and the Security Agreement ("Security Agreement"), both central to Longo's allegations, occurred as part of the settlement of the PVSC/Longo Litigation. *See* Compl. ¶ 23 (c) – (d); *see also* Def.'s Mot. Dismiss 9-11. Longo sets forth that the Earn Out Agreement between Longo and EPIC was entered into in February 1999 while EPIC contends that the agreement was entered into after March 12, 1999. Compl. ¶ 23 (c); Def.'s Mot. Dismiss 10. Longo also asserts that the "terms of the Earn Out Agreement and the Security Agreement are inextricably interconnected and co-terminus with the terms[s] of the Article of Agreement and/or the Transportation Services Agreement." Compl. ¶ 28.

Under the Earn Out Agreement, Longo purports that:

> Pursuant to the Articles of Agreement and the Transportation Services Agreement, EPIC agreed, as a subcontractor of WCWNJ, to provide those transportation and related services for the PVSC on the terms and conditions contained in the Articles of Agreement and the Transportation Services Agreement. EPIC, in turn, is required, by the Earn Out Agreement to pay to Longo all or a portion of the amounts paid to EPIC by WCWNJ on account of the provision of transportation and related services to the PVSC under the Articles of Agreement and the Transportation Services Agreement.

*Id.* ¶ 31. Longo alleges that the "Security Agreement between Longo and EPIC dated on February 18, 1999 ... pursuant to which EPIC (which, pursuant to the EPIC/CAHC Stock

Purchase Agreements, was then wholly-owned by CAHC), granted, assigned, pledged, transferred and delivered to Longo a valid, first lien on and security interest in all of EPIC's right, title and interest in and to certain collateral, including, but in no way limited to: (a) the Articles of Agreement, and (b) the Transportation Services Agreement (collectively and as defined in the Security Agreement, the 'Collateral')." *Id.* ¶ 23 (d), Ex. E.

Thereafter, pursuant to a stock purchase agreement, the then owners of EPIC, CAHC, sold all of EPIC's issued and outstanding shares of corporate stock to Synagro. Accordingly, by the end of 2000, Synagro owned all of the issued and outstanding shares of both EPIC and WCWNJ, rendering Synagro the complete owner of both entities. *Id.* ¶¶ 45, 46. As a result of WCWNJ's new ownership, the corporate name was changed to Synagro - WCWNJ. *Id.* ¶ 45.

In August and September of 2016, Longo asserts that various corporate officers of Synagro and EPIC communicated to Longo that the PVSC Services Agreement (as amended by the First, Second and Third PVSC Services Agreement Amendments) would, pursuant to its terms, be expiring as of August 31, 2016. *Id.* ¶ 71. Longo also contends that it was also communicated to him that Synagro - WCWNJ had entered into a new contract with PVSC that was materially different from and in replacement of the PVSC Services Agreement, and would commence immediately after the expiration of the PVSC Services Agreement (as amended) on September 1, 2016 and that as a result of the foregoing, the last payment that EPIC would be making to Longo under the Earn Out Agreement would be a payment for any Earn Out consideration due from EPIC to Longo for August 2016. *Id.* ¶ 71. Longo contends that on September 15, 2016, EPIC transmitted a check made payable to Longo bearing the legend "final payment under the Earn Out Agreement." Id ¶ 81. According to Longo's Complaint, on or around October 21, 2016, outside counsel to Synagro sent a correspondence to Longo delineating the alleged reasons why

the Earn Out Agreement was no longer enforceable by Longo. *Id.* ¶ 84. Longo asserts that the letter stated that "Synagro is confident that it owes you no money under the Earn Out Agreement and that it was an oversight to have paid you under this agreement for some years." *Id.* ¶ 85, Ex. G. Furthermore, Longo contends that the aforementioned letter ignores the terms of the 1999 Agreements and the PVSC Services Agreement as well as more than fifteen years of its course of performance. *Id.* ¶ 86. Longo alleges, pursuant to Section 7 of the Earn Out Agreement, on November 30, 2016 he issued a formal demand for access to EPIC's books and records for such purpose. *Id.* ¶ 110. And, Longo claims that under Section 6 of the Security Agreement, he has the right to inspect and duplicate the books and records of EPIC, including, but not limited to portions pertaining to receivables. *Id.* ¶ 109.

### B. Procedural History

Longo filed the instant Complaint on December 9, 2016 alleging the following eleven[6] causes of action: Accounting and Disgorgement; Breach of Contract; Breach of the Implied Covenant of Good Faith and Fair Dealing; Conversion and Misappropriation; Unjust Enrichment; Malicious and Tortious Interference with Prospective Economic Advantage; Negligent Misrepresentation; Declaratory Relief; Indemnity; Foreclosure; and Mandatory Injunctive Relief. *See* Compl.

On February 6, 2017, EPIC filed a motion seeking to dismiss the following five of the eleven counts brought by Longo: (1) Accounting and Disgorgement; (2) Conversion and Misappropriation; (3) Malicious and Tortious Interference with Prospective Economic Advantage; (4) Negligent Misrepresentation and (5) Unjust Enrichment. Def.'s Mot. Dismiss 14 - 16. On March 20, 2017, Longo filed an opposition to EPIC's motion to dismiss (ECF No. 19,

---

[6] Plaintiff's Complaint sets forth eleven causes of action however Count II and Count VIII are both repeated and therefore the claims are numbered Counts I – IX as opposed to Counts I – XI. Therefore, the Court refers to Plaintiff's claims by name and also as numbered in Defendant's motion to dismiss.

"Pl.'s Opp'n to Def.'s Mot. Dismiss"). EPIC then filed a reply to the response to the motion to dismiss (ECF No. 20, "Def.'s Reply to Pl.'s Resp. to Def.'s Mot. Dismiss") on March 27, 2017.

On February 10, 2017, Longo filed the motion for a preliminary injunction presently before the Court against EPIC requesting that EPIC abide by the terms and conditions of the Earn Out Agreement and/or the Security Agreement. Thereafter, on March 20, 2017, EPIC filed an opposition to Longo's motion for a preliminary injunction (ECF No. 20, "Def.'s Opp'n to Pl.'s Mot. Prelim. Inj."). Longo then filed a response in further support of his motion requesting injunctive relief on March 27, 2017 (ECF No. 22, "Pl.'s Resp. to Def.'s Opp'n to Pl.'s Mot. Prelim. Inj.").

## II.  LEGAL STANDARDS

### A.  Standard on a Motion to Dismiss

For a complaint to survive a motion to dismiss under Federal Rule of Civil Procedure 12 (b)(6), it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp v. Twombly*, 550 U.S. 544, 570 (2007)). When assessing the sufficiency of a complaint the Court must accept all well-pleaded factual allegations in the complaint as true and draw all reasonable inferences in favor of the non-moving party. *See Phillips v. County of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008). "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Furthermore, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of further factual enhancement." *Iqbal*, 129 S. Ct. at 1949.

## B. Standard for a Preliminary Injunction

Federal Rule of Civil Procedure 65 authorizes district courts to grant preliminary injunctions. "A preliminary injunction is an extraordinary remedy that should only be granted if: (1) the plaintiff is likely to succeed on the merits; (2) denial will result in irreparable harm to the plaintiff; (3) granting the injunction will not result in irreparable harm to the defendant; and (4) granting the injunction is in the public interest." *NutraSweet Co. v. Vit-Mar Enters., Inc.,* 176 F.3d 151, 153 (3d Cir. 1999) (citations omitted). A party seeking a preliminary injunction bears the burden of satisfying each of the aforementioned factors. *See Id.* To obtain a preliminary injunction, the moving party must demonstrate both a likelihood of success and the probability of irreparable harm if relief is not granted. *Morton v. Beyer*, 822 F. 2d 364, 367 (3d Cir. 1987)(quotations omitted); *see also In re Arthur Treacher's Franchisee Litig.*, 689 F.2d 1137, 1143 (3d Cir. 1982)("[W]e cannot sustain a preliminary injunction ordered by the district court where either or both of these prerequisites are absent.")

## III.   DISCUSSION

As EPIC moves to dismiss five of Longo's eleven claims and Longo seeks a preliminary injunction requesting the parties be restored to the *status quo ante*, the Court will discuss each parties' motion below. First, the Court will address EPIC's partial motion to dismiss the following of Longo's claims: (1) Conversion and Misappropriation; (2) Malicious and Tortious Interference with Prospective Economic Advantage; (3) Negligent Misrepresentation; (4) Accounting and Disgorgement and (5) Unjust Enrichment. The Court will then assess Longo's request for injunctive relief. For the reasons that follow, EPIC's partial motion to dismiss as to Longo's Conversion and Misappropriation, Malicious and Tortious Interference with Prospective Economic Advantage, Negligent Misrepresentation and Accounting and Disgorgement is granted

and denied as to Longo's claim for Unjust Enrichment. As further discussed below, Longo's request for injunctive relief is denied.

### A. **EPIC's Motion to Dismiss**

EPIC moves to dismiss Longo's claims for Conversion and Misappropriation, Malicious and Tortious Interference with Prospective Economic Advantage, and Negligent Misrepresentation alleging that the aforementioned tort claims are barred by the Economic Loss Doctrine and secondly that the claims are insufficiently plead and therefore should not survive a 12(b)(6) motion. Def.'s Mot. Dismiss 19, 23. The Court agrees with EPIC and finds that the Economic Loss Doctrine bars Longo's claims for Conversion and Misappropriation, Malicious and Tortious Interference with Prospective Economic Advantage, and Negligent Misrepresentation. Since the Court dismisses said claims on account of the Economic Loss Doctrine, the Court does not find it necessary to address EPIC's 12(b)(6) arguments against the abovementioned allegations.

In regards to Longo's claims for both Accounting and Disgorgement and Unjust Enrichment, EPIC argues for their dismissal claiming that both fail to identify an independent, non-contractual basis in their support. *Id.* 30, 32. For the reasons that follow, the Court dismisses Longo's Conversion and Misappropriation, Malicious and Tortious Interference with Prospective Economic Advantage, Negligent Misrepresentation and, Accounting and Disgorgement claims without prejudice and denies EPIC's motion to dismiss Longo's Unjust Enrichment claim. To the extent the deficiencies in the Complaint may be cured by way of amendment, the aforementioned claims are dismissed without prejudice.

### 1. **Economic Loss Doctrine**

EPIC contends that the Economic Loss Doctrine bars Longo's claims for Conversion and Misappropriation, Malicious and Tortious Interference with Prospective Economic Advantage,

and Negligent Misrepresentation arguing that the conduct alleged in each of Longo's tort claims is identical to the conduct alleged in the Breach of Contract claims and seeks the same monetary relief. *See* Def.'s Mot. Dismiss 19-23. In opposition, Longo argues that the Federal Rules explicitly set forth that a Plaintiff may plead in the alternative and "seek relief in the alternative." Pursuant to Federal Rule of Civil Procedure 8(d)(2) "[a] party may set out two or more statements of a claim or defense alternatively or hypothetically, either in a single count or defense or in separate ones. If a party makes alternative statements, the pleading is sufficient if any one of them is sufficient." The Federal Rules also set forth under Rule 8(d)(3) a "party may state as many separate claims or defenses as it has, regardless of consistency." Longo argues that consistent with the liberal notice standard of Federal Rule of Civil Procedure 8(a) permitting a plaintiff "to seek relief in the alternative or of several different types" based upon a "short and plain statement of a claim," he is entitled to plead claims for Conversion and Misappropriation, Malicious and Tortious Interference with Prospective Economic Advantage, and Negligent Misrepresentation in the alternative.

In *Spring Motors Distributors, Inc. v. Ford Motor Co.,* 98 N.J. 555, 581-82, 489 A. 2d 660, 673-74 (1985), the New Jersey Supreme Court first recognized the Economic Loss Doctrine. Under New Jersey law, the Economic Loss Doctrine "prohibits parties from recovering in tort economic losses to which their entitlement only flows from contract." *Duquesne Light Co. v. Westinghouse Elec. Co.,* 66 F.3d 604, 618 (3d Cir. 1995). "The Economic Loss Doctrine is designed to place a check on limitless liability ... and establish clear boundaries between contract and tort law." *Werwinski v. Ford Motor Co.,* 286 F.3d 661, 680 (3d Cir. 2002). Furthermore, "whether a tort claim can be asserted alongside a breach of contract claim depends on whether the tortious conduct is extrinsic to the contract between the parties." *State Capital*

*Title & Abstract Co. v. Business Serv., LLC, et al.*, 646 F. Supp. 2d 668, 676 (D.N.J. 2009)(citing *Capital Plus Equity, LLC v. Prismatic Dev. Corp.*, No. 07-321, 2009 U.S. Dist. LEXIS 54054, 2008 WL 278339, at *6 (D.N.J. July 16, 2008)(citation omitted)).

Although the New Jersey Supreme Court has not established whether the Economic Loss Doctrine applies to prohibit fraud claims, New Jersey District Courts differentiate between fraudulent performance claims and fraudulent inducement claims finding that New Jersey law bars fraudulent performance claims when contractual remedies exist. *See, e.g., Gleason v. Norwest Mortgage, Inc.*, 243 F.3d 130, 144 (3d Cir. 2001)("The New Jersey District Courts still hold that fraud claims not extrinsic to underlying contract claims are not maintainable as separate causes of action."); *Unifoil Corp. v. Cheque Printers & Encoders,* 622 F. Supp. 268, 271 (D.N.J. 1985); *see also Vanguard Telecommunications, Inc. v. S. New England Tel. Co.,* 900 F.2d 645, 654 (3d Cir. 1990). As discussed below, the Court finds that Longo's claims for Conversion and Misappropriation, Malicious and Tortious Interference with Prospective Economic Advantage, and Negligent Misrepresentation are barred by the Economic Loss Doctrine because Longo does not demonstrate that he suffered any losses beyond the economic loss governed by the contract itself.

### a. Conversion and Misappropriation

Longo's claim asserting Conversion and Misappropriation alleges that the Earn Out Agreement requires that EPIC hold all amounts received by EPIC to which Longo is entitled under the Earn Out Agreement in trust for the sole benefit of Longo and that all funds be segregated from other funds of EPIC and delivered to Longo. Compl. ¶¶ 136, 137. Furthermore, Longo contends that EPIC has failed to demonstrate that it is or has ever held all amounts due to Longo under the Earn Out Agreement in a separate account solely for the benefit of Longo. *Id.* ¶

141.   As a direct and proximate result of EPIC's actions and/or inactions, Longo claims that he has suffered and will continue to suffer financial loss, damage and irreparable harm. *Id.* ¶ 142. EPIC moves to dismiss Longo's Conversion and Misappropriation claim alleging that this tort claim arises out of the same allegations as the breach of contract claim and seeks the same monetary damages. Def.'s Mot. Dismiss 20.   In opposition, Longo asserts that the Complaint sets forth sufficient facts to sustain, under a breach of contract theory or, in the alternative, under an equitable theory of Conversion and Misappropriation of trust funds and other property subject to Longo's security interest and rightfully belonging to Longo, and on account of the agreements brokered by and between Longo and EPIC. Pl.'s Opp'n to Def.'s Mot. Dismiss 33.

As Longo provides that the Earn Out Agreement specifically requires EPIC "to hold any and all amounts received by EPIC and due and owing to Longo under the Earn Out Agreement 'in trust for the benefit of Longo...,' and that all such amounts 'shall be segregated from other funds of EPIC and shall be delivered by EPIC to Longo... .'" Pl.'s Opp'n to Def.'s Mot. Dismiss 34. Longo asserts that EPIC either materially breached its obligations under the relevant agreements or wrongfully caused all such funds to be converted and misappropriated by EPIC for its benefit and at the expenses of Longo's legitimate interests. *Id.* As demonstrated in Longo's Complaint and opposition to EPIC's motion to dismiss, Longo's Conversion and Misappropriation claim is rooted in the same facts as his Breach of Contract claim because his Breach of Contract claim asserts that by ceasing to make payments to Longo, EPIC breached the Earn Out Agreement. *See* Compl. ¶¶ 116 – 118.   Longo claims that the Earn Out Agreement required EPIC to segregate any funds due and owing to Longo and to hold said funds in trust for the benefit of Longo. Longo further asserts that EPIC's alleged failure to segregate and maintain a trust fund for the benefit of Longo violates Section 1(f) of the Earn Out Agreement because the Security

Agreement provides EPIC must indemnify and hold Longo harmless from any claims and losses under the Earn Out Agreement and/or the Security Agreement as well as pay on demand all amounts incurred by Longo in connection with the exercise and enforcement of Longo's rights under the Earn Out Agreement and/or the Security Agreement. *Id.* 34. New Jersey courts have expressly restricted application of the doctrine of conversion when it seeks to turn on a claim based on breach of contract. *Chicago Title Ins. Co. v. Ellis*, 409 N.J. Super 444, 455, 978 A.2d 281 (App. Div. 2009). Because Longo's conversion claim asserts that EPIC failed to honor its obligations under the Earn Out Agreement and Security Agreement, Longo's claim is akin to his Breach of Contract claim against EPIC and is therefore dismissed.

### b. Malicious and Tortious Interference with Prospective Economic Advantage

Longo claims that EPIC knowingly and maliciously interfered with his rights, entitlements and benefits under the Earn Out Agreement and Security Agreement which was motivated by the sole purpose of intentionally and tortiously depriving Longo of his justifiable and reasonable expectation of his entitlements under said agreements, and due to EPIC's interference, he suffered financial injury. Compl. ¶ 37. EPIC purports that Longo's allegations are duplicative of the allegations in his Breach of Contract and Breach of Implied Good Faith and Fair Dealing counts and seeks the same monetary relief. Def.'s Mot. Dismiss 14 – 15. More specifically, EPIC cites to *Air Express Int'l v. Log-Net, Inc.* and contends that when conduct in a tort claim is entirely duplicative of that in a breach of contract claim, the Economic Loss Doctrine applies to bar the claim. *See* No. 12-1732, 2016 U.S. Dist. LEXIS 129409, at *3 (D.N.J. Sep. 22, 2016). Longo argues the Complaint pleads sufficient facts to demonstrate the viability, or at least in the alternative, of Longos's cause of action with regard to the tortious interference of EPIC with

Longo's reasonable expectations under the Earn Out and Security Agreements. Pl.'s Opp'n to Def.'s Mot. Dismiss 35.

"Where the sole claim is that the contracting party did not perform as warranted, the Economic Loss Doctrine may bar a fraud-based claim." *Freedom Waste Solutions, Inc. v. Family Dollar*, No. 15-4756 2015 U.S. Dist. LEXIS 139630 (D.N.J. Oct. 14, 2015) (citing *Alloway v. General Marine Idus., L.P.* 149 N.J. 620, 628 (1997)). Longo fails to allege any conduct on the part of EPIC that is intrinsic on the performance of the contract. Further, the only recourse for relief of Longo's claim is through contract remedies as Longo's Complaint claims that "the interference by Defendant EPIC with Plaintiff's rights, entitlements and benefits under the Earn Out Agreement and the Security Agreement" caused him to sustain economic hardship. Compl. ¶¶ 147, 148. Since the New Jersey Economic Loss Doctrine prohibits relief on these grounds, the Court dismisses Longo's claim alleging Malicious and Tortious Interference with Prospective Economic Advantage without prejudice.

### c. Negligent Misrepresentation

In his Complaint, Longo purports that:

> The false, inaccurate and/or misleading representations of material fact made in connection with Defendant EPIC's continuing enforceability of and performance under the 1999 Agreements, including the Earn Out Agreement and the Security Agreement, were made negligently by Defendant EPIC and its agents. Plaintiff reasonably and in good faith relied upon the materially false and misleading representations and other non-disclosures and/or omissions of material fact made by Defendant EPIC and Defendant EPIC's agents in connection with Defendant EPIC's performance or non-performance under the Earn Out Agreement and the Security Agreement, and thereafter, Plaintiff's enforcement of his rights under the Earn Out Agreement and the Security Agreement.

Compl. ¶¶ 150, 151. As a direct and proximate result of the alleged misrepresentations, Longo claims that he has been caused to suffer and in the future will continue to suffer financial loss

and irreparable harm. *Id.* ¶ 154. In moving to dismiss Longo's negligent misrepresentation claim, EPIC relies on *Int'l Minerals & Min. Corp. Citicorp N. Am., Inc.*, a New Jersey District Court case which dismissed a tort claim based on the lack of duty owed to the plaintiff, reasoning that "[i]t has long been the law that remedies in tort relating to a breach of contract may not be maintained in addition to those established under the contract itself in the absence of any independent duty owed by the breaching party to the plaintiff." 736 F. Supp. 587, 597 (D.N.J. 1990). In light of the foregoing, EPIC further argues that Longo has not alleged a relationship between the parties or the existence of any duty apart from the alleged 1999 Agreements, Security Agreement and Earn Out Agreement. The Court agrees with EPIC and finds that the Complaint fails to set forth any conduct on the part of EPIC extrinsic to the contract rendering the Economic Loss Doctrine inapplicable and dismisses this count without prejudice.

### d. Accounting and Disgorgement

Longo's complaint sets forth "Defendant EPIC owes Plaintiff all or portion of funds received by EPIC from WCWNJ or Synagro-WCWNJ under and on account of the Articles of Agreement and the Transportation Services Agreement, which amounts were to have been held in trust for the sole benefit and immediately turned over to Plaintiff." Compl. ¶ 112. Furthermore, Longo asserts that:

> Under the Earn Out Agreement and Security Agreement, Defendant EPIC is required to hold and preserve all records concerning receivables under the 1999 Agreements and chattel paper pertaining thereto at its chief place of business (as specified in the Security Agreement) and is required to permit Plaintiff and/or Plaintiff's representatives to inspect, review and duplicate such records. Therefore, Plaintiff seeks: (a) access to the books and records of EPIC pertaining to, *inter alia*: (i) all amounts paid to or receivables owed to Defendant EPIC under the 1999 Agreements, and (ii) all chattel paper pertaining to all amounts paid to or receivables owed to Defendant EPIC under the 1999 Agreements; and (b) payment of amounts all amounts found to owed by Defendant EPIC to Plaintiff.

*Id.* ¶¶ 114, 115.   EPIC moves to dismiss Longo's Accounting and Disgorgement Claim arguing that this claim is "simply his breach of contract claim restated – not an independent cause of action." Def.'s Mot. Dismiss 30.   In support of its argument, EPIC relies on *Rainbow Apparel, Inc. v. KCC Trading, Inc.*, No. 9-cv-05319, 2010 U.S. Dist. LEXIS 51664, at * 18 (D.N.J. May 26, 2010)(citing *Dairy Queen, Inc. v. Wood*, 369 U.S. 469 (1962)) and *Mon Cheri Bridals, LLC v. Bowls*, No. 14-8107, 2015 U.S. Dist. LEXIS 37554, at * 6 (D.N.J. Mar. 25, 2015) and claims that in accordance with the aforementioned case law, if Longo seeks the equitable remedy of an accounting, then he must demonstrate that there is no adequate remedy at law.

In opposition, Longo contends that "the terms and conditions of the relevant agreements plainly reflect that it was intended by the parties (*i.e.*, Longo and EPIC) that Longo's cause of action for audit and accounting (as well as Longo's request, in the alternative, for the disgorgement of all amounts received by EPIC that resulted in EPIC's unjust enrichment at the expense of Longo) are based primarily upon express provisions in the Earn Out Agreement and the Security Agreement – *i.e.*, are primarily contractual and not, as contended by Defendant in the Defendant's Motion, equitable causes of action." Pl.'s Opp'n to Def.'s Mot. Dismiss 37.

"An accounting in equity cannot be demanded as a matter of right or of course. The exercise of equitable jurisdiction to compel an account rests upon three grounds - first, the existence of a fiduciary of trust relation; second, the complicated nature or character of the account; and third, the need of discovery." *Borough of Kenilworth v. Graceland Memorial Park Ass'n*, 124 N.J. Eq. 35, 37, 199 A. 716 (N.J. Ch. Ct. 1938). A Plaintiff's accounting claim is thus premised on the existence of a fiduciary relationship between a Plaintiff and Defendant. *SalandStacy Corp. v. Freeney*, No. 11-3439, 2012 U.S. Dist. LEXIS 38141, at *37-38 (D.N.J. Mar. 21, 2012)(Linares, J.)   An accounting is traditionally an equitable remedy, which is injunctive in nature.

*See Borough of Kenilworth v. Graceland Memorial Park Assoc.*, 124 N.J. Eq. 35, 199 A. 716, 717 (N.J. Ch. 1938); *Thomas Glob. Grp., LLC v. Watkins*, No. 13-04864, 2014 U.S. Dist. LEXIS 48042, at *25 (D.N.J. Apr. 8, 2014). Because Longo's Accounting and Disgorgement claim is premised upon the argument that EPIC failed to comply with the requirements of the Earn Out Agreement and Security Agreement by refusing to comply with Longo's demand for access to EPIC's books and records, the Court finds that Longo is essentially requesting that the Court determine the validity of the contract. Therefore, the claim is dismissed.

### e. Unjust Enrichment

The Court denies EPIC's motion to dismiss Longo's Unjust Enrichment claim because at this stage in the proceeding, Longo may plead, in the alternative to his Breach of Contract claim, an unjust enrichment claim. Therefore, EPIC's argument that Longo does not allege facts independent of a breach of contract claim fails and the Court denies EPIC's motion as to this count. Under New Jersey law, unjust enrichment is not recognized as an independent tort cause of action. *Castro v. NYT Television*, 851 A. 2d 88, 98 (N.J. Super Ct. App. Div. 2004). "Unjust Enrichment is [] a familiar basis for imposition of liability in the law of Contracts." *Id.* (citing Restatement (Second) of Contracts § 345 (d) (1981)). Because an Unjust Enrichment claim is rooted in the theory of quasi-contractual liability, the Court finds that Longo's Unjust Enrichment claim may proceed on this alternative theory of liability. Therefore, the Court finds EPIC's argument that Longo's claim for Unjust Enrichment fails to present independent facts outside a contractual right unpersuasive and denies EPIC's motion to dismiss this count.

### B. Longo's Motion for a Preliminary Injunction

Longo seeks a preliminary injunction restoring the *status quo ante* between EPIC and Longo thereby requiring EPIC continue to perform its alleged obligations under the Earn Out

Agreement and Security Agreement pending a full adjudication on the merits of the underlying

Complaint. Pl.'s Mot. Prelim. Inj. 1. After carefully reviewing the submissions of the parties,

the Court finds Longo has failed to allege that he will suffer irreparable harm required for the

Court to impose injunctive relief in his favor.

i.    Probability of Success

The first prong for the preliminary injunction analysis requires that a party show that it will

likely succeed on the merits. Under New Jersey law, for a plaintiff to successfully establish a

breach of contract claim, the following elements must be shown: (1) A contract exists; (2)

breach of that contract; (3) Damages arising from the alleged breach; and (4) the party performed

its own contractual duties. *Frederico v. Home Depot*, 507 F. 3d 188, 203 (3d Cir. 2007); *Video*

*Pipeline, Inc. v. Buena Vista Entm't, Inc.*, 210 F. Supp. 2d 552, 561 (D.N.J. 2002)(citing *Pub.*

*Serv. Entm't Grp., Inc. v. Philadelphia Elec. Co.*, 722 F. Supp. 184, 219 (D.N.J. 1989)).

As an initial matter, Longo sets forth that it must be acknowledged that the parties

incontrovertibly expressed their agreement to honor and abide by the terms and conditions of the

Earn Out Agreement and the Security Agreement by executing the same. Pl.'s Mot. Prelim. Inj.

32. In furtherance of Longo's assertion that the Earn Out Agreement and Security Agreement

exist as valid and enforceable contracts, Longo alleges that both agreements explicitly provide

that they shall remain in full force and effect for so long as the Articles of Agreement and

Transportation Services Agreement remain in full force and effect. *Id.* Moreover, Longo

maintains that the Articles of Agreement and the Transportation Services Agreement provide that

they shall remain in full force and effect for so long as the PVSC Services Agreement is

effective, including any extensions and renewals thereof. *Id.* Longo argues that EPIC "has not,

because it cannot, offer[] a single reason for justifying a finding that the PVSC Services

18

Agreement has expired or been validly terminated." And, according to Longo, "[a]s the PVSC Services Agreement remains in full force and effect, the Articles of Agreement and the Transportation Services Agreement, and, in turn, the Earn Out Agreement and the Security Agreement, remain enforceable. Thus, the operative agreements are valid and enforceable agreements." *Id.*

In further support of his Breach of Contract claim, Longo also contends that EPIC has no valid basis to allege that any of the 1999 Agreements, including the Earn Out Agreement and the Security Agreement, have expired or been terminated. Therefore, Longo argues the facts reflect that all of the 1999 Agreements remain in full force and effect and that EPIC's refusal to continue to honor its obligations to timely pay Longo those amounts due and owing to Longo under the Earn Out and Security Agreements has resulted in a material breach of both agreements. Pl.'s Mot. Prelim. Inj. 31. Longo additionally supports his claim by alleging that EPIC materially breached the operative agreements by failing to honor its obligation to seek and obtain, prior to ceasing to perform, a final, non-appealable order from a court holding that some or all of the terms and conditions of the Earn Out Agreement and the Security Agreement have been abrogated or terminated. *Id.* 33. Longo maintains that due to EPIC's alleged refusal to honor any of its obligations under the Earn Out Agreement and the Security Agreement since September 1, 2016, Longo has been and will continue to be harmed unless the Court grants his request and enters an injunction requiring EPIC to return the parties to the *status quo ante* and honor its obligation to Longo under the Earn Out Agreement and the Security Agreement. *Id.* 34. Lastly, to the extent required by the Earn Out Agreement, the Security Agreement, the Articles of Agreement, and the Transportation Services Agreement, Longo claims that he has timely and fully performed any and all obligations. *Id.* 34.

Because a plaintiff need only show a likelihood of success on the merits rather than a showing that the plaintiff is certain to win, the Court finds that Longo has established a likelihood that he will succeed on his Breach of Contract claim, however, because he has failed to prove he will suffer irreparable harm, Longo's request for injunctive relief is denied. *See Morton*, 822 F. 2d at 367.

ii.    Irreparable Harm to the Plaintiff

Longo argues that absent injunctive relief he will suffer irreparable harm because, in addition to the monetary damages resulting from EPIC's alleged breach of contract, he has and will continue to suffer potential irreparable nonmonetary damages due to EPIC's purported material breaches of the Earn Out Agreement and Security Agreement. Pl.'s Mot. Prelim. Inj. 35.   In support of his argument, Longo asserts:

> Material to the bargained-for settlement, the Earn Out Agreement and the Security Agreement were the requirements that EPIC: (a) not seek to amend, modify or terminate any of the 1999 Agreements without prior consent of Longo; (b) hold all funds due and owning to Longo for the sole benefit of Longo and in a segregated account (*i.e.* take actions necessary to ensure that the amounts owing to Longo were not commingled with any funds belonging to EPIC; (c) timely deliver all amounts due and owing to Longo together with a certification of an officer and director of EPIC attesting to the accuracy of the calculations underlying each monthly payment; (d) seek and obtain a final, non-appealable order of a court of competent jurisdiction prior to purporting to terminate or modify all of part of the Earn Out Agreement or the Security Agreement (in the interim EPIC agreed to continue to honor its obligations under these same agreements; and (e) indemnify and hold harmless Longo with respect to any and all amounts expended or incurred by Longo in connection with the enforcement of the terms and conditions in the Earn Out Agreement or Settlement Agreement and on an as incurred basis.

*Id.* Longo further argues that he will suffer significant harm in the event the Court does not award him injunctive relief since the terms and conditions above were explicitly included in the operative agreements to minimize or eliminate any risk to him. *Id.*

In opposition to Longo's request for injunctive relief, EPIC asserts that the only relief sought by Longo is monetary damages and therefore his economic injury does not constitute irreparable harm necessary to support an award of injunctive relief. Def.'s Opp'n to Pl.'s Mot. Prelim. Inj. 15. Relying on Third Circuit and Supreme Court precedent, EPIC further asserts that this rule also applies to the loss of ongoing income. *See Instant Air Freight Co v. C.F. Air Freight, Inc.*, 882 F. 2d 797, 801 (3d Cir. 1989)(quoting *Sampson v. Murray*, 415 U.S. 61, 90 (1964)).

In addition to demonstrating a probability of success, the moving party must show irreparable harm. As Third Circuit precedent has consistently held, "[e]conomic loss does not constitute irreparable harm." *Acierno v. New Castle Cnty.*, 40 F. 3d 645, 633 (3d Cir. 1994). "In order to demonstrate irreparable harm the plaintiff must demonstrate potential harm which cannot be redressed by a legal or an equitable remedy following a trial. The preliminary injunction must be the only way of protecting the plaintiff from harm." *Instant Air Freight,* 882 F. 2d at 801 (citing *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312, 72 L. Ed. 2d 91, 102 S. Ct. 1798 (1982)); *Continental Group, Inc. v. Amoco Chemicals Corp.*, 614 F.2d 351, 356 and n. 9 (3d Cir. 1980). "[A] preliminary injunction which order[s] the payment of monies where the underlying contract is disputed, misconceives the equitable nature and purpose of an injunctive proceeding." *In re Arthur Treacher's Franchisee Litig.*, 689 F.2d 1137, 1145 (3d Cir. 1982). It is well settled that "[t]he availability of adequate monetary damages belies a claim of irreparable injury. . . . [because] a purely economic injury, compensable in money, cannot satisfy the irreparable injury requirement." *Frank's GMC Trust Center, Inc. v. General Motors Corp.,* 847 F.2d 100, 102 (3d Cir. 1988). When the claim for a preliminary injunction is based on breach of contract, "irreparable injury may be found in two situations: (1) where the subject matter of the contract is of such a special nature of peculiar value that damages would be inadequate; or (2) where

21

because of some special and practical features of contract, it is impossible to ascertain the legal measure of loss so that money damages are impracticable." *Ecri v. McGraw Hill, Inc.*, 809 F. 2d 223, 226 (3d Cir. 1987)(citing *A.L.K. Corp. v. Columbia Pictures & Indus, Inc.*, 440 F. 2d 761, 763 (3d Cir. 1971)).

To establish irreparable harm, Longo must provide a clear showing of immediate irreparable[7] harm if the parties are not restored to the *status quo ante. See Hoxworth v. Blinder, Robinson & Co.,* 903 F.2d 186, 205 (3d Cir. 1990) (citing *Ecri,* 809 F. 2d at 225 ("Establishing a risk of irreparable harm is not enough. A plaintiff has the burden of proving a clear showing of immediate irreparable injury.")(internal quotations omitted)). Here, the damages that Longo claims are capable of being ascertained at a later stage in the proceeding and if awarded to Longo, may ultimately make Longo whole in the event he is awarded damages. Thus, the Court finds that Longo fails to demonstrate that he will suffer irreparable harm if injunctive relief is not granted in his favor. As the Third Circuit held in *Instant Air Freight:*

> It seems clear that the temporary loss of income, ultimately to be recovered, does not usually constitute irreparable injury. . . . key word in this consideration is *irreparable*. Mere injuries, however substantial, in terms of money, time and energy necessarily expended in the absence of a stay are not enough. The possibility that adequate compensatory or other corrective relief will be available at

---

[7] Discussing the nature of irreparable injury, Judge Aldisert wrote for the Court:

> [T]he requisite feared injury or harm must be irreparable -- not merely serious or substantial. The work means that which cannot be repaired, retrieved, put down again, atoned for... Grass that is cut down cannot be made to grow again; but the injury can be adequately atoned for in money. The result of the cases fixes this to be the rule: the injury must be of a peculiar nature, so that compensation in money cannot atone for it. . . . Irreparable injury is suffered where monetary damages are difficult to ascertain or are inadequate.

*In re Arthur Treacher's Franchisee Litig.*, 689 F.2d 1137, 1146 (3d Cir. 1982)(quoting *Glasco v. Hills*, 558 F 2d. 179, 181-82 (3d Cir. 1977)(citing *Glause v. Perkins*, 3 Jones Eq. 177, 69 Am. Dec. 728 (1857)); *Danielson v. Local 275, Laborers Union*, 479 F.2d 1033, 1037 (2d Cir. 1973); *A. O. Smith Corp. v. F.T.C.*, 530 F.2d at 515, 525 (3d Cir. 1976)(internal quotations and citations omitted).

a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm.

882 F.2d at 801 (3d Cir. 1989)(denying plaintiff's request for injunctive relief since "the monetary damages which [plaintiff] alleges it is suffering are capable of ascertainment and award at final judgment if it prevails")(internal quotations omitted)).

iii.    Irreparable Harm to the Defendant

Although "the moving party must demonstrate both a likelihood of success on the merits and the probability of irreparable harm if relief is not granted" to obtain a preliminary injunction, the Court has taken into account the possibility of harm to others interested in the grant or denial of an injunction. *Morton*, 822 F. 2d at 367 (citing *Freixenet, S.A. v. Admiral Wine & Liquor Co.*, 731 F. 2d 148, 151 (3d Cir. 1984); *Oburn v. Shapp*, 521 F. 2d 142, 147 (3d Cir. 1975)). Regarding harm to EPIC, Longo claims that since the injunctive relief requested seeks to restore the parties to the *status quo ante* so that EPIC continue to honor its obligations under the Earn Out Agreement and the Security Agreement as it has allegedly done for the past seventeen years and that Longo will likely suffer irreparable injury absent an injunction, the Court need only consider whether an injunction would unduly harm EPIC. Pl.'s Mot. Prelim. Inj. 36. To support this argument, Longo cites to *Opticians Ass'n of Am. v. Indep. Opticians of Am.*, 920 F. 2d 187, 197 (3d Cir. 1990) and *Church & Dwight Co. v. S.C. Johnson & Son, Inc.*, 873 F. Supp. 893, 912 (D.N.J. 1994). But *Opticians Ass'n of Am.* concerns the use of federally registered trademarks where the irreparable harm is of "a peculiar nature so that compensation in money alone cannot atone for it." 920 F. 2d at 196 (citing *Morton v. Beyer*, 822 F. 2d 364, 372 (3d Cir. 1987). In finding that the grant of a preliminary injunction was warranted in favor of the nonuse of the trademark by the defendant, the Third Circuit stated that "[g]rounds for finding irreparable injury include loss of control of reputation, loss of trade and loss of good will." *Id.* As "[o]ne of the

23

goals of the preliminary injunction analysis is to maintain the *status quo* defined as the last peaceable, noncontested status of the parties," to restore the parties in this matter to the *status quo* and require EPIC continue to honor its obligations under the Earn Out Agreement and the Security Agreement, would require EPIC to extend payments to Longo as the damages asserted by Longo are only financial in nature. *See Opticians Ass'n of Am.*, 920 F. 2d at 197 (3d Cir. 1990). Longo further argues that any alleged harm to EPIC that may result from an injunction is self-inflicted by EPIC because it failed to honor its obligations under the operative agreements pending a final adjudication since it is receiving benefits by allegedly avoiding its obligations under the operative agreements. The Court finds that Longo here fails to demonstrate that restoring the parties to the previous state of affairs would impose no greater harm upon EPIC than would be imposed on Longo by the denial of an injunction and his request for injunctive relief is no more than a claim for monetary relief.

      iv.    <u>Public Interest</u>

A preliminary injunction may not be issued when a plaintiff fails to demonstrate likelihood of success on the merits and irreparable harm to the plaintiff. *Morton*, 822 F. 2d at 367. Because the Court finds that Longo fails to establish that he will suffer irreparable harm in the absence of a preliminary injunction, the Court need not engage in a public interest analysis.

## IV.    **CONCLUSION**

For the reasons discussed above, the Court grants in part and denies in part Defendant's partial Motion to Dismiss and denies Plaintiff's Motion for a Preliminary Injunction.    An appropriate Order accompanies this Opinion.

DATED:  June ___, 2017

JOSE L. LINARES
UNITED STATES DISTRICT JUDGE